ALTENBERND, Judge,
specially concurring.
I concur in the result announced in the court’s opinion. I agree with the trial court, however, that the agreement is ambiguous. Read in isolation, paragraphs 1, 2, and 7 may not be confusing, but they are ambiguous when one attempts to determine the parties’ intent from the agreement as a whole. Pursuant to paragraph 7, each party is entitled to “dispose of her or his separate property the same as if the marriage did not exist.” It seems clear that the parties understood that any disposition pursuant to paragraph 7, other than a gift, would necessarily result in the acquisition of replacement property. If paragraph 2 is interpreted to include such replacement property as “property acquired during the marriage,” then no transaction can occur under paragraph 7 “as if the marriage did not exist,” because the transaction will always create marital property under paragraph 2.
For example, the husband’s nonmarital property included a $100,000 money market account. If he had sold units from that account and had reinvested those funds in a mutual fund in his own name, under the reasoning in the court’s opinion, the mutual fund would become a marital asset. From a reading of this agreement as a whole, it is clear to me that the parties did not intend such a transfer of funds from one passive investment to another to be an acquisition that transformed the nonmari-tal asset into a marital asset. This result, however, cannot be achieved unless para *133 graph 2 is interpreted in light of the provisions in paragraphs 1 and 7. Thus, I agree with the trial court that the agreement is ambiguous and must be construed to achieve the parties' intent.
In this specific case, however, the husband used nonmarital assets to purchase the marital homestead when it was in very poor condition. Thereafter, he used marital assets to substantially improve the property. The husband was a master carpenter. He did extensive work on the marital home in lieu of other gainful employment during the marriage. Thus, at least the enhancement in value to this house was a marital asset under Florida law. § 61.-075(3)(a)2, Fla.Stat. (1989). Under normal circumstances, the husband might have been entitled to prove a special equity in this home or to claim the initial purchase price as a nonmarital asset. In this case, the parties expressly drafted their antenup-tial agreement “pursuant to the Illinois Marriage and Dissolution of Marriage Act, Chapter 40, Illinois Revised Statutes, 1981, Section 503(a)(4).” They made no agreement to retain any claims in the nature of special equity against their marital property, and expressly released “all benefits of the laws of Illinois or any other state” concerning their properties. I am convinced that it was the intent of the parties to this antenuptial agreement to waive rights, such as special equity, when non-marital property became totally intermingled with marital property. Accordingly, I agiaa with the result in this case.